UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GILBERT SYPHER,

             Plaintiff,

vs.

AETNA INSURANCE COMPANY,

             Defendant.

_____ /

No. 13-10007

District Judge Sean F. Cox

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

      This is an ERISA case.  On November 30, 2012, Plaintiff Gilbert Sypher filed a

complaint in the Wayne County Circuit Court seeking payment of long-term disability

benefits under a group disability insurance plan provided by his employer, Federal

Express.  On January 2, 2013, Defendant Aetna Insurance Company ("Aetna") removed

the case to this Court.  Before the Court are Plaintiff's Motion for Summary Judgment

[Doc. #11] and Defendant's Cross-Motion for Summary Judgment [Doc. #12], which

have been referred for Reports and Recommendations pursuant to 28 U.S.C. §

636(b)(1)(B).  For the reasons discussed below, I recommend that Defendant's Motion

[Doc. #12] be GRANTED, and that Plaintiff's Motion [Doc. #11] be DENIED.

-1-

## I.   FACTS

Plaintiff began working at Federal Express on December 14, 1987 (AR 96).[1] He was covered by a Long Term Disability ("LTD") and a Short Term Disability ("STD") plan. He received STD benefits from April 11, 2010 to October 9, 2010, and then received LTD benefits from October 10, 2010 to October 9, 2012 (JA 3-4).  On September 4, 2012, Defendant Aetna informed Plaintiff by letter that further LTD benefits would be denied, and on October 26, 2012, Aetna's Appeal Review Committee denied an appeal of that decision, stating, "The benefit was denied because there is a lack of significant objective findings to substantiate a claim under the Plan for Total Disability" (AR 1).

On June 16, 2011, an Administrative Law Judge at the Social Security Administration granted Plaintiff Social Security Disability Insurance Benefits, finding that as the result of the severe impairments of hemianopsin, seizure disorder, and headaches, Plaintiff would be unable to work 40 hours per week in any competitive employment (AR 23).  The ALJ stated:

> "The claimant has the residual functional capacity to perform light work a
> defined in CFR 404.1567(b) except he must never use ladders, scaffolds, or
> ropes; may occasionally use ramps, stairs, stoop, kneel, crouch, crawl or
> balance; must avoid walking on uneven surfaces; should avoid all exposure
> to hazards including dangerous and unprotected machinery or heights; must
> not involve detailed or precision work, reading or working with computers;
> and whose medical condition imposes restriction that precludes 40 hour per
> week competitive employment." *Id.*

---

[1] "AR" refers to the Joint Appendix [Doc. #10].

The administrative record contains the following information from Plaintiff's treating physicians. Dr. David Burdette, M.D., noted Plaintiff's history of localization-related epilepsy that required surgical intervention in the past, specifically a right inferior parietal craniotomy in 2006. He noted symptoms of headaches, seizure-associated change in vision, memory loss, trouble concentrating, and occasional dizziness. Dr. Burdette diagnosed "localization-related epilepsy manifesting as simple partial seizures evolving into complex partial seizures with and without secondary generalization." He concluded that Plaintiff "remains unable to pursue gainful employment due to both the seizures and the visual field." (AR 69-71).

On June 18, 2012, Dr. Burdette noted that since his last evaluation on October 24, 2011, Plaintiff had been seizure-free, "except for ongoing simple partial seizures (hearing buzzing noises when he stands too quickly and resolves when he sits....)(AR 13-14). Plaintiff reported that his headaches had improved, and that he preferred to wait before starting anti-migraine medication. *Id*. However, Dr. Burdette opined that Plaintiff was "unable to pursue gainful employment due to ongoing seizures, the permanent memory impairment, and the permanent visual field deficit." *Id*.

On June 2, 2012, Dr. Mandel, another treating physician, provided an acknowledgment to Aetna that Plaintiff "can work at any compensable employment for minimum of twenty-five hours a week (i.e. sedentary job for 25 hours per week)" (AR 76). On June 12, 2012, Dr. Mandel opined that Plaintiff's "visual field deficit would likely pose a significant permanent condition, and may pose problems with reading,

driving, and many other tasks." (AR 75). He stated that Plaintiff's "ability too work would be dictated by the creativity of his employer and his innate ability to overcome this significant abnormality." *Id.*

On August 15, 2012, Dr. Burdette informed Aetna that Plaintiff would be "unable to work at any compensable employment for a minimum of twenty-five hours per week" (AR 77).

On August 28, 2012, Dr. Bruce LeForce, M.D. performed a non-examining file review on behalf of Aetna. Reviewing the treating source records, he noted Plaintiff's diagnosis of localization-related epilepsy and his history of seizures, including continuing simple partial seizures every one to two weeks. However, he noted that Plaintiff "has had no generalized tonic clonic seizures since starting Lamictal." (AR 81). Concluding that Plaintiff did not have an impairment that would preclude working 25 hours per week, Dr. LeForce stated:

> "The claimant has impairment on the basis of his seizure disorder and his hemianopsia. He cannot operate a commercial vehicle, cannot climb, other than stairs, and he cannot work at unprotected heights. He cannot operate or work around heavy machinery. He cannot work a job that requires full visual fields. With these restrictions/limitations however, he is capable of engaging in compensable employment for a minimum of 25 hours per week." *Id.*

On October 4, 2012, Dr. Vaughn Cohan, M.D. performed a peer review on behalf of Aetna. Dr. Cohan noted Dr. Burdette's opinion that Plaintiff was unable to work, but also noted Dr. Burdette's conclusion that Plaintiff's "higher cortical functions and mental status were...within normal limits including examination of recent and remote memory."

-4-

(AR 87).  He also considered Dr. Mandel's opinion that Plaintiff was capable of working 25 hours per week.  Dr. Cohan concluded that the documentation available to him "is not indicative of a functional impairment that would preclude performance of 'any compensable employment' for a minimum of 25 hours per week effective 10/10/12."  *Id*.

On October 16, 2012, Dr. Samuel Winn, M.D., and ophthalmologist, performed a non-examining peer review on behalf of Aetna.  He opined as follows:

> "[T]his claimant has a diagnosis of epilepsy and a significant field defect occupying the entire left half of his vision in both eyes.  Despite this, he is capable of seeing well with the right half of his field.  If the working conditions can be such that he is able to be in a sedentary position and not be in an environment in which there is anything coming at him from the left side, he would be able to perform various tasks....Therefore, I agree with the physician review previously stated that the claimant is able in the right environment and with the proper restrictions to perform employment for a minimum of 25 hours per week from 10/10/12 to the current time." (AR 90).

The LTD Plan in this case designates Plaintiff's employer, Federal Express, as the Plan Administrator (AR 395, 397). Defendant Aetna is the Claims Paying Administrator (AR 396).  The Plan provides that to qualify for LTD benefits for a period longer that two years, the claimant must be "totally disabled."  The Plan defines "total disability" as:

> "[T]he complete inability of a Covered Employee, because of a medically-determinable physical or functional impairment (other than an impairment caused by a mental or nervous condition or a Chemical Dependency), to engage in any compensable employment for twenty-five hours per week." (AR 406).

## II.    STANDARD OF REVIEW

This case is brought under the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1001, *et seq*. Under ERISA, when a plan administrator or employer has the discretionary authority to determine eligibility for benefits, federal courts review a decision to deny benefits under "the highly deferential arbitrary and capricious standard of review." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168-69 (6th Cir. 2003), quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th cir. 1996). "[T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Williams v. International Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)(internal citations and quotations omitted).

## III. DISCUSSION

### A. Plaintiff has Failed to Join an Indispensable Party

Rule 12(b)(7) of the Federal Rules of Civil Procedure requires dismissal of a case "for failure to join a party under Rule 19." According to Rule 19, a party subject to service of process, whose joinder will not deprive the court of subject-matter jurisdiction, " must be joined " if (a) "in that person's absence, the court cannot accord complete relief among the parties," or (b) "that person claims an interest" such that disposing of the action in that person's absence may "impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double,

multiple, or otherwise inconsistent obligations because of the interest." Fed.R.Civ.P. 19(a)(1).

Plaintiff mistakenly claims that Defendant Aetna "has authority to make final determinations on benefit eligibility so it is the administrator and payor." *Plaintiff's Brief*, p. 1. Aetna does make determinations on eligibility, but it is not the Plan Administrator, and it does not pay the claims. Rather, Federal Express is self-insured, and it, not Aetna, both funds the Plan and pays benefits. Federal Express is designated as the Plan Administrator under the explicit terms of the Plan. *See* 29 U.S.C. § 1002(16) (the Plan administrator is the person specifically designated by the terms of the instrument under which the Plan is operated).

In this case, Plaintiff seeks the recovery of benefits, pursuant to 29 U.S.C. § 1132(a)(1)(B). Aetna does not pay benefits, Federal Express does. In cases such as this, the Plan, through the Plan Administrator is the proper party. *See Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988)(proper party in ERISA action is the one that "is shown to control the administration of the plan"); *Neuma, Inc. V. AMP, Inc.*, 259 F.3d 864, 872 (7th Cir. 2001)("ERISA permits suits to recover benefits only against the Plan as an entity"); *Hall v. LHACO, Inc.*, 140 F.3d 1190, 1196(Plan Administrator is the proper party in an ERISA case).

Plaintiff has not joined Federal Express, the Plan Administrator, as a party. Because Plaintiff seeks benefits, and because those benefits would be paid by Federal Express, (1) the Court cannot grant complete relief in the absence of Federal Express, and

-7-

(2) Federal Express cannot protect its interests in the absence of joinder.  Thus, Federal Express is a necessary party under Rule 19, and Plaintiff's failure to join Federal Express necessitates dismissal under Rule 12(b)(7).

### B.    Aetna's Decision was not Arbitrary and Capricious

Under the "arbitrary and capricious" standard of review, the Fund need only "articulat[e] a rational connection between the facts found and the choice made." *Smart v. State Farm Ins. Co.,* 868 F.2d 929, 936 (7th Cir.1989).  Aetna has met that standard.

Unlike the rule in Social Security disability cases, treating physicians are not given deference in ERISA review.  *Black & Decker Disability Plan, supra*, 538 U.S. at 832-33, 123 S.Ct. at 1965.  Nevertheless, the Court in *Black & Decker* felt constrained to add that "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician."  *Id.*  Here, Aetna did in fact consider the conflicting treating physician opinions, and rationally credited Dr. Mandel's opinion that Plaintiff was capable of working 25 hours per week, albeit with restrictions. Dr. Cohan, who conducted a file review on behalf of Aetna, specifically referred to Dr. Mandel's conclusions in opining that Plaintiff was capable of working 25 hours per week. Dr. LeForce referred to clinical notes indicating that Plaintiff "has had no generalized tonic clonic seizures since starting Lamictal." (AR 81). In any event, Aetna's rejection of Dr. Burdette's opinion in favor of its own consultative doctors (as well as Dr. Mandel) "does not change the result under the arbitrary-and-capricious standard." *Bougherty v. Indiana Bell Telephone Co.*, 440 F.3d 910,918 (7th Cir. 2006).

Were this *de novo* review, my recommendation might well be different.  But under the arbitrary and capricious standard, Aetna has clearly "articulated a rational connection between the facts found and the choice made." *Smart v. State Farm Ins. Co., supra*, 868 F.2d at 936.  Its decision should be affirmed.

## IV.   CONCLUSION

For these reasons, I recommend that  Defendant's Motion for Summary Judgment [Doc. #12] be GRANTED, and that Plaintiff's Motion for Summary Judgment[Doc. #11] be DENIED.

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than

twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: March 4, 2014                    s/R. Steven Whalen_____
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing documents were sent to parties of record on March 5, 2014, electronically and/or by U.S. Mail.

                                        s/Michael Williams_____
                                        Case Manager for the
                                        Honorable R. Steven Whalen